Marilyn **MEYER**, Plaintiff,

v.

**G. D. SEARLE & CO.**, a foreign corporation, Defendant.

No. 65–C–1251.

United States District Court
E. D. New York.

Sept. 21, 1966.

Speiser, Shumate, Geoghan & Krause, New York City, for plaintiff; Paul Rheingold, New York City, of counsel.

Costello, Ward, Tirabasso & Shea, New York City, for defendant; Mortimer Shea, New York City, of counsel.

ROSLING, District Judge.

Motion by plaintiff for an order pursuant to Rule 34 of Fed.R.Civ.P. requiring defendant to produce and permit plaintiff to inspect and copy or photograph the correspondence in the defendant's files between it and the United States Food and Drug Administration [FDA] relating to the defendant's product "Enovid" is granted. It appears that Enovid is a prescription drug manufactured by defendant and used for contraceptive purposes.

The complaint, grounded on a claim that its use damaged her heart, alleges causes of action against defendant for negligence, breach of warranty, strict liability and misrepresentation, and a separate cause of action against the FDA for its alleged negligence "in acquiescing to the marketing of said Enovid by defendant [Searle] notwithstanding notice and knowledge to it of the potential dangerousness of the drug and even though the data submitted by Searle to the FDA was inadequate; and in failing to order the withdrawal of the drug from the market on the basis that the drug was unsafe for clinical use, or to otherwise order adequate warnings of danger to accompany the product."

Upon a motion by the government to dismiss as to it on the ground that its action involved the exercise of discretion, plaintiff finding the government's brief "persuasive," discontinued its action against that defendant.

Searle's answer is in effect a general denial. Its objection to the plaintiff's motion is limited to a claim that plaintiff has failed to set forth the "good cause" which Rule 34 conditions as requisite for the granting of relief such as is here sought. Defendant, on the other hand, seeks no protective directions limiting discovery on the ground that trade secrets may thereby be disclosed,[1] or that

---

1. Vague claims as to confidentiality made by defendant in the opposing affidavit of its counsel are unimpressive. Therein it is alleged that "[i]n the absence of a proper showing of good cause, certain correspondence between FDA and a drug manufacturer should remain more or less privileged. For example, this is true of trade secrets (admittedly not in dispute). Defendant maintains this is also true of communications between company and FDA leading up to the final approval of advertisements, labelling etc. An unrestricted right of inspection by the public will perforce weaken the effectiveness of the entire structure created by Pure Food and Drug Act."

Plaintiff in her moving affidavit proposes qualifications on the sweep of the discovery so as not to invade "privileges in this correspondence * * * of trade secrets and medical privacy * * * [and to] cooperate with the defendant in any way possible to avoid the exposure of these secrets. All so-called 'trade secrets' may be omitted; plaintiff is not interested in learning how to manufacture Enovid. All names of patients may be deleted if the defendant feels exposure of the names would violate any sort of physician-patient privilege."

The order to be entered herein would entail great difficulties for the draftsman and, possibly, would create, rather than eliminate, problems in its execution were there to be included therein by the the Court detailed implementing directions. The cooperative attitude evinced by the parties in their earlier dealings with one another, as reflected in the papers before the Court, gives promise that the good sense of the attorneys would in all likelihood minimize disputes between them as to the intent of provisions couched in general language. There would thus be submitted for the Court's specific determination, if later required, only those instances, hopefully few in number, where the attorneys had in good faith failed to agree.

The order should, however, fix as the latest date of any correspondence to be discovered the day in March, 1965 when plaintiff allegedly last used the accused drug. This restriction is in conformity with movant's further concession in the attorney's affidavit in that regard.

the discovery applied for would if granted subject defendant to unreasonably onerous burdens were it to undertake to comply.

The subject correspondence is comprised of what is known in the drug industry as the "New Drug Application," [NDA]. It consists of all data submitted to the government by the applicant drug manufacturer relative to a drug it was proposing for consideration by the FDA, and the request and other letters and communications received in turn by the manufacturer from the agency.

The opposing parties are in agreement that "[i]t is on the basis of the NDA that the FDA grants its permission to the company to market its drug, and the drug may remain for sale so long as the NDA is effective."

Plaintiff's attorney as affiant further contends, immediately following the foregoing excerpt from his affidavit, that "Thus, the correspondence sought is the very basis for the 'license' to sell." This is accepted by the Court as a fair assessment of the significance of the correspondence sought to be discovered in its role as an integral part of the "tort" itself, and not as mere evidence of it.

Defendant's contra argument that the correspondence is "as negotiations between FDA and Searle necessarily merged into the final labelling which was approved by the government and preliminary negotiations can shed no light on the issue of this case" lacks force. For if plaintiff's averments were to be accorded validity, then a defendant would profit by his affirmative deception, reckless representations, or inadequate disclosure, alone or in disastrous combination with the FDA's reliance thereon or its careless or incompetent investigation of the properties of the drug, submitted for its expert review. Thereby the manufacturer would have been immunized from a liability to which, even in the bygone era when the rule of caveat emptor prevailed, it would have been subject under the common law. The plaintiff, a stranger to the proceedings between Searle and FDA, yet relying, among other things, upon the Administration's cachet, would be in worse case than would one who suspiciously, though inexpertly, sniffed the bottle before electing to ingest its contents.

The frame of reference for defendant's exposure to the tort claims asserted by the ultimate consumer toward whose pocketbook defendant's less than completely altruistic conduct was directed, includes, but is surely not wholly circumscribed by, the official recognition accorded the Searle publicity as unexceptionable in its marketing of the product. In the relationship between the parties wherein the manufacturer controls the information plaintiff needs, either directly to sustain her cause or, indirectly to lead her to useful and competent evidence, and in the nonavailability of the government's public records [2] wherein a copy of the NDA file is to be found, sufficient good cause is to be found for ordering the discovery applied for.[3]

Settle order on notice.

2. Reid v. Harper Bros., 17 F.R.D. 281, 283 (S.D.N.Y.1955, Kaufman, J.).

3. Reid v. Harper Bros., supra 17 F.R.D. at p. 284; Baker v. Procter & Gamble Co., 17 F.R.Serv. 30b.352, Case 1, at p. 460 (S.D.N.Y.1952, Weinfeld, J.); Houdry Process Corp. v. Commonwealth Oil Refining Co., 24 F.R.D. 58, 62 (S.D.N.Y. 1959, Herlands, J.).